# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SHAWN RILEY,

                Plaintiff,

v.

C.O. FRANKE, LT. CAMPBELL, CAPT. SCHULTZ, SGT. FRANCOIS, CATHERINE FRANCOIS, R.N. VAN VERKINTER, R.N. TREMEL, and R.N. JANE DOE #1,

                Defendants.

Case No. 17-CV-891-JPS

**ORDER**

1. **INTRODUCTION**

Plaintiff, who is incarcerated at the Wisconsin Secure Program Facility, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #2). Plaintiff has been assessed and paid an initial partial filing fee of $13.49. 28 U.S.C. § 1915(b)(4).

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d

773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts; his statement need only "'give the defendant fair notice of what the. . .claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "'labels and conclusions'" or "'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "'that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should first "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal

conclusions must be supported by factual allegations. *Id*. If there are well-pleaded factual allegations, the Court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give Plaintiff's *pro se* allegations, "'however inartfully pleaded,'" a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## 2. RELEVANT FACTS

Plaintiff's claims arise from a period when he was confined at the Green Bay Correctional Institution. (Docket #1 at 1).[1] On August 5, 2011, he had a run-in with C.O. Franke ("Franke") during the passing out of Ramadan meals. *Id.* at 2. Franke was dropping the meals, which came in bags, on the filthy floors of the prisoners' cells. *Id.* Plaintiff perceived what Franke was doing and complained to Franke about it before he arrived at Plaintiff's cell. *Id.* at 1–2.

Franke nevertheless dropped Plaintiff's meal on the ground. *Id.* at 2. Plaintiff alleges that this was due to Franke's dislike of Ramadan participants and Muslims in general. *Id.* Plaintiff immediately complained again, and the two had a heated, profanity-laden exchange. *Id.* Franke next

---

[1]In addition to the twelve pages of allegations in the complaint itself, Plaintiff attached nearly fifty pages of exhibits to his complaint. *See* (Docket #1-1). The Court ignored these documents, as its review must be limited to the allegations falling within the four corners of the complaint itself. *Hill v. Trs. of Ind. Univ.*, 537 F.2d 248, 251 (7th Cir. 1976).

set Plaintiff's milk on the cell trap door, which was open, and Plaintiff reached out to retrieve them. *Id.* He thought they were too warm and asked Franke to replace them with cold ones. *Id.* Franke refused, and when Plaintiff continued to complain, he brusquely pushed the milks into the cell and used his knee to shut the trap door onto Plaintiff's hand. *Id.* at 4. When Plaintiff exclaimed that he would file an inmate complaint about the incident, Franke looked at him and said, "You ain't gonna do shit!" before walking away. *Id.*

Plaintiff hit the medical emergency button in his cell and requested medical attention for his hand injury. *Id.* A correctional officer came and spoke with Plaintiff briefly, left for a time, and then returned with another officer, Sgt. Francois *Id.* at 5. Sgt. Francois told Plaintiff that Lt. Campbell ("Campbell"), one of the supervisory correctional officers, ordered that Plaintiff would be under a back-of-cell restriction to avoid further instances of getting his hand caught in the cell trap door. *Id.* Plaintiff protested that he had done nothing wrong. *Id.* He asked for immediate medical attention and asked to speak with Campbell. *Id.*

Francois called for medical staff to see Plaintiff. *Id.* While they waited, Plaintiff asked Sgt. Francois why Campbell had instituted the back-of-cell restriction without conducting a full investigation, including taking photographs of Plaintiff's injuries, and in a seeming effort to punish Plaintiff. *Id.* Sgt. Francois said that he did not know, but he would tell Campbell that Plaintiff wanted to speak with him. *Id.* Plaintiff alleges that Campbell was trying to cover up Franke's wrongdoing by refusing to gather evidence about the assault. *Id.* Plaintiff claims that he suffered the back-of-cell restriction, which forced him to kneel six times a day in order to be fed, for a month. *Id.*

Plaintiff spoke with Campbell on August 9, 2011. *Id.* at 6. He asked that photographs be taken of his injuries, but Campbell refused. *Id.*

Next, Plaintiff claims that he filed a timely offender complaint against Campbell with the prison's Inmate Complaint Examiner ("ICE"), Catherine Francois ("Francois"). *Id.* According to him, she returned the complaint to him with instructions that he attempt informal resolution of the matter first although she knew that he had already tried this and knew that she would reject any refiled complaint as untimely. *Id.* Plaintiff claims that she was showing favoritism to her husband, Sgt. Francois. *Id.*

Plaintiff filed another offender complaint, this time against Franke for his alleged assault, on August 19, 2011. *Id.* Francois acted as the ICE in that case. *Id.* The complaint was dismissed, though Plaintiff gives little detail about the investigation and disposition. *Id.* He appears to assert that the investigation was inadequate, again because no one took photos of his hand. *Id.* He says that this was another instance of Francois' favoritism toward correctional officers. *Id.*

Plaintiff then claims that Franke, in an effort to cover up his assault, issued a retaliatory and bogus conduct report against him. *Id.* Plaintiff alleges that Franke told other correctional officers, including Campbell and Sgt. Francois, that he had in fact used excessive force against Plaintiff and that these individuals encouraged him to cover up his actions by issuing a fabricated conduct report that portrayed Plaintiff as the aggressor. *Id.* Plaintiff points to what he sees as factual inconsistencies in the conduct report that reveal it as a fabrication. *Id.*

The next step in the cover-up came when Plaintiff had a hearing on the conduct report before Capt. Schultz ("Schultz"). *Id.* at 7. Plaintiff accuses Schultz of failing to be impartial during the hearing and relying on the

allegedly false statements of the officers. *Id.* Plaintiff was given a 21-day loss of recreation privileges for his conduct. *Id.*

Plaintiff's final allegations relate to the medical care he received after his injury by Franke. *Id.* He was first seen by nurse Tremel ("Tremel") about an hour after his injury. *Id.* However, Plaintiff alleges that Tremel did not fully appreciate the severity of his injuries and how they would affect his daily activities, including his five daily prayers. *Id.* Plaintiff was prescribed hot and cold packs and pain medication, but claims that he was denied medication because the correctional officers distributing it said it had run out and not been refilled. *Id.*

Plaintiff was seen several more times by prison medical staff, but each time the severity of his injuries was overlooked or downplayed. *Id.* Plaintiff says that his continued evaluation and treatment belies the notion that his injuries were minor. *Id.* However, an x-ray showed no fractures in Plaintiff's hand. *Id.* He rejoins that on the basis of the x-ray results, medical staff dismissed his complaints and allowed his injuries to heal, "thereby concealing [them]." *Id.* Plaintiff asserts that after his transfer to the Wisconsin Secure Program Facility on September 20, 2011, he was found to be suffering pain resulting from deep tissue bruising and a stretched median nerve. *Id.* at 8. Treatment for his pain is ongoing. *Id.*

On September 2, 2011, Plaintiff filed an offender complaint against nurse Van Verkinter ("Van Verkinter"), alleging that the nurse refused him treatment and aggressively manipulated his hands during evaluation. *Id.* at 7. Francois reviewed the complaint and returned it to Plaintiff, instructing him to first attempt informal resolution of the problem. *Id.* at 7–8. When Plaintiff told Francois that he had tried to address the matter with Schultz, who was the segregation supervisor, she did not respond. *Id.* at 8.

## 3. PLAINTIFF'S CLAIMS

Plaintiff raises a litany of legal claims out of his factual allegations. *Id.* at 9–11. To streamline the evaluation of the claims, the Court will identify them and at the same time evaluate whether they can proceed.[2]

### 3.1 The Assault: Defendant Franke

First are the claims against Franke. Plaintiff contends that Franke engaged in religious discrimination, in violation of Plaintiff's free exercise rights under the First Amendment, by purposefully handling the Ramadan meals in an unsanitary fashion. *Id.* at 9. Plaintiff further alleges that Franke assaulted him without provocation, thereby engaging in the use of excessive force in violation of the Eighth Amendment. *Id.* He also claims that the injury to his hand was an act of religious discrimination inasmuch as it impeded his ability to perform his daily prayers. *Id.* Finally, Plaintiff asserts that Franke's actions violated his right to equal protection under the Fourteenth Amendment. *Id.*

The Eighth Amendment claim may proceed, but the others may not. Taking Plaintiff's allegations as true, Franke's unprovoked assault against Plaintiff constituted excessive force in violation of the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

However, Plaintiff's allegations do not implicate the Free Exercise Clause of the First Amendment. Franke may have dropped Ramadan meals

---

[2]At the outset, the Court notes that Plaintiff makes claims against each Defendant in both their individual and official capacities. The official-capacity claims must be dismissed, as such a claim is in reality against the State itself, *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978), and neither the State nor its officials acting in their official capacities are amenable to a damages suit under Section 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

on the floor, but they were bagged. Plaintiff offers no reason to believe that the meals were actually sullied in any way; instead, he seems to make a constitutional claim out of his annoyance at having to pick the meal up off of the cell floor. Franke's actions did not prevent or hinder Plaintiff from eating his religious meal and therefore did not "plac[e] a substantial burden on [plaintiff's] religious practices." *See Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016); *Thomas v. Review Bd.*, 450 U.S. 707, 717–18 (1981) (a substantial burden must be so severe as to "put substantial pressure on an adherent to modify his behavior and to violate his beliefs").

Likewise, Plaintiff's assertion that Franke acted with discriminatory animus against Muslims is pure speculation. *Thompson*, 809 F.3d at 380 (a plaintiff must show that the defendant personally and intentionally discriminated on the basis of his religion). Franke said nothing suggesting that his actions were premised on a dislike of the adherents of Islam, and Plaintiff does not describe how other, non-Muslim inmates' bagged meals were distributed, so the mere fact that these meals were dropped on the floor does not support an inference of discrimination. Similarly, there are no allegations substantiating the idea that Franke smashed Plaintiff's hand because he was a Muslim. Instead, the only plausible view of the facts is that the two men were having a heated argument that boiled over into violence. Thus, the First Amendment claim cannot proceed.

Additionally, the Court must dismiss Plaintiff's claim for denial of equal protection. "The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). The standard for analyzing "class

of one" claims is in flux, *see Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc), but "[a]t a minimum. . .[a plaintiff] must show that she was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," *Billington v. Vill. of Armington*, 498 F. App'x 572, 574 (7th Cir. 2012); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 563–64 (2000).

Here, Plaintiff does not identify whether his equal protection claim is premised on his religion or is a "class of one" claim. Yet in either case, Plaintiff has not identified how he was treated differently from any other similarly situated inmate. *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941–42 (7th Cir. 2010). As noted above, Plaintiff did not explain how other inmates' meals were handled differently, and his allegations about Franke's treatment of others' meals actually undermines a claim of disparate treatment.[3] Thus, Plaintiff may proceed against Franke only on the Eighth Amendment excessive force claim.

### 3.2 The Cover-Up: Defendants Campbell, Sgt. Francois, Schultz, and ICE Francois

Next, Plaintiff alleges claims against the prison officials involved in the alleged cover-up of Franke's malfeasance. Plaintiff asserts that Campbell's refusal to investigate Plaintiff's complaints about Franke's assault, in particular his refusal to take photographs of Plaintiff's injuries,

---

[3]Additionally, if the equal protection claim is premised on Plaintiff's religion, the claim likely fails under *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005), which holds that where an inmate asserts a First Amendment free-exercise claim and a Fourteenth Amendment equal protection claim based on the same facts, the equal protection claim is duplicative. This is consistent with the Supreme Court's admonition that constitutional claims should be analyzed only under the most relevant provision. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

coupled with Campbell's punitive and unwarranted back-of-cell restriction, violated Plaintiff's rights under the First Amendment, constituted cruel and unusual punishment in violation of the Eighth Amendment, and deprived him of due process and equal protection under the Fourteenth Amendment. *Id.* Additionally, Plaintiff raises Fourteenth Amendment due process and equal protection claims against Sgt. Francois arising from the fact that Sgt. Francois knew about Franke's conduct and knew that Franke's conduct report was fabricated, but did nothing. *Id.* at 10. Further, Plaintiff claims that Schultz violated his Fourteenth Amendment due process and equal protection rights by siding against him with respect to the conduct report, despite Plaintiff's protestations about his injuries and the officers' campaign of concealment. *Id.*

For all these Defendants, Plaintiff's equal protection claim cannot proceed. As with the claim against Franke, here Plaintiff has not attempted to explain how he was treated differently from any other similarly situated inmate, a fundamental prerequisite to stating a claim for denial of equal protection of the law. *LaBella*, 628 F.3d at 941–42; *Olech*, 528 U.S. at 564.[4] His conclusory, passing references to the Equal Protection Clause do not carry him over even the low threshold required at screening.

Likewise, Plaintiff cannot maintain a due process claim against any of these Defendants.[5] First, his punishment was only a 21-day loss of

---

[4]It is notable that Plaintiff does not suggest that these individuals acted on the basis of his religion; his only claim is that they tried to cover up Franke's conduct out of an intrinsic preference for correctional officers over inmates.

[5]Plaintiff does not say whether his "due process" claim arises from procedural or substantive due process. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Yet because his claims concern alleged failures to investigate and misconduct related to his disciplinary hearing, and because Plaintiff identifies no

recreation privileges. Such a deprivation does not implicate any of Plaintiff's protected liberty interests, and so no process was due him. *Simpson v. Douma*, No. 04–C–298–C, 2004 WL 1563284, at *2–3 (W.D. Wis. June 30, 2004); *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (to support a due process claim, a deprivation must represent an "atypical and significant hardship" in relation to ordinary prison life); *Long v. Hanks*, 78 F.3d 586 (7th Cir. 1996). Indeed, Plaintiff concedes that he received an exceedingly light punishment in relation to the maximum allowable punishment of six months' solitary confinement. (Docket #1 at 7).

Second, to the extent Plaintiff alleges that correctional officers lied about his conduct or were complicit in Franke's false conduct report, it is indisputable that lying is not itself a constitutional violation. Even if a guard prepares a false conduct report that ultimately results in sanctions against the inmate, the inmate has no claim if he was afforded the procedural due process protections outlined in *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984). Here, Plaintiff's allegations show that such protections were afforded to him. Moreover, because Plaintiff was given notice and a hearing at which to challenge the sufficiency of the evidence (and, by extension, the investigation itself), his procedural due process rights were not infringed by Campbell's alleged failure to perform a thorough investigation. *Id.*

Finally, although procedural due process commands that a prisoner be heard by an impartial decision-maker, *Wolff*, 418 U.S. at 566, Plaintiff has offered no more than conjecture to support the accusation that Schultz was

---

fundamental right implicated by these facts, the Court assumes that the claims are solely directed at violations of procedural due process. *Id.*

biased. The standard for asserting a claim of bias against a prison hearing officer is high, *Hoskins v. McBride*, 13 F. App'x 365, 369 (7th Cir. 2001), and Plaintiff's allegations do not meet the mark.

As to the separate claims against Campbell, Plaintiff may proceed on a First Amendment retaliation claim based on Campbell's purported retributory back-of-cell restriction imposed in light of Plaintiff's complaints about the Franke assault. *See Bridges v. Gilbert*, 557 F.3d 541, 551–52 (7th Cir. 2009); *Pearson v. Welborn*, 471 F.3d 732, 740–41 (7th Cir. 2006). However, Plaintiff may not proceed on a First Amendment claim of denial of access to courts. Plaintiff complains that Campbell did not take photos of his injury, but at this juncture, it is only speculation that Campbell's refusal to investigate will prejudice some nonfrivolous legal claim of Plaintiff's. *Bridges*, 557 F.3d at 553; *Christopher v. Harbury*, 536 U.S. 403, 414 (2002). Moreover, it does not appear that Campbell's refusal to perform this portion of the investigation would make out a claim in any event, since Plaintiff was present and has firsthand knowledge of the relevant events. *See Thomson v. Boggs*, 33 F.3d 847, 852 (7th Cir. 1994).

Similarly, Plaintiff may not proceed against Campbell on an Eighth Amendment claim relating to the thirty-day back-of-cell restriction, as such a restriction is not sufficiently severe to be called cruel and unusual punishment. *See Caldwell v. Miller*, 790 F.2d 589, 600–01 (7th Cir. 1986) (conditions are only actionable as cruel and unusual where "they involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification"); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (prisoners are entitled under the Eighth Amendment to "the minimal civilized measure of life's necessities"); *Adams v. Kincheloe*, 743 F.

Supp. 1393, 1398 (E.D. Wash. 1990) (observing that while being forced to stand at the back of one's cell while one's food is dropped through the cell door is not pleasant or dignified, it does not rise to the level of an Eighth Amendment violation).

Finally, there is ICE Francois. Plaintiff accuses her of trying to stifle his ability to grieve about Franke's assault. (Docket #1 at 10). As explained above, Plaintiff believes he got the run-around from her when she said that he would need to try informal resolution before filing a complaint, knowing that she would reject a refiled complaint as untimely if he took the time to engage in those preliminary efforts. *Id.* Further, he states that she unreasonably rejected his complaint about his medical care despite receiving evidence of his attempts at informal resolution. *Id.* at 11. This conduct, Plaintiff alleges, violated his First Amendment right to free speech and his Fourteenth Amendment due process and equal protection rights. *Id.*

Normally, those who review inmate complaints are not liable simply for denying a prisoner the relief he seeks. *See Ali v. West*, Case No. 16–CV–1518–JPS, 2017 WL 176304, at *5 (E.D. Wis. Jan. 17, 2017). Certainly, no prisoner has a liberty interest in obtaining satisfactory relief from a complaint examiner. *Boribune v. Berge*, No. 04–C–0015–C, 2005 WL 840367, at *3 (W.D. Wis. Apr. 11, 2005). However, they can be liable if ignoring the prisoner's grievances rises to the level of deliberate indifference to sufficiently serious, ongoing medical needs or conditions of confinement. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009); *Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir. 2005).

No such circumstance arose here, however. Plaintiff's complaint is merely that the ICE Francois' investigation did not go as he desired. Thus,

Plaintiff has no due process claim. *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("As long as [prison officials] did not deprive Strong of his opportunity to contest the merits of the charge before the grievance board or sabotage his chance to obtain redress in court, the defendants' uncooperative approach is not an independent constitutional tort; there is no duty to assist in an effort to obtain private redress."); *Meyer v. Teslik*, No. 05-C-269 C, 2005 WL 1463528, at *3 (W.D. Wis. June 21, 2005) ("Plaintiff does not have a liberty interest in mere procedural guidelines governing inmate complaints."). Further, his equal protection claim against her fails for the same lack of disparate treatment as it did with respect to Campbell, Sgt. Francois, and Schultz. *LaBella*, 628 F.3d at 941–42.

Finally, Plaintiff's First Amendment claim against ICE Francois must be dismissed. She has not impeded his ability to exhaust his prison administrative remedies, as he was able to appeal her rejection or other disposition of his grievances. Nor is there any allegation that she attempted to (or succeeded) in impeding his access to the courts. *Vasquez v. Hernandez*, 60 F.3d 325, 329 (7th Cir. 1995); *Bridges*, 557 F.3d at 555 ("Because [plaintiff] is currently exercising his right to petition the government for redress of grievances through this lawsuit, he has not been harmed."). Thus, all the claims against her must be dismissed.

### 3.3 The Medical Defendants: Van Verkinter, Tremel, and Jane Doe #1

Plaintiff's last batch of claims relates to his medical care. As to Van Verkinter, Plaintiff claims that the nurse acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, by failing to appreciate the severity of his injuries and failing to order an MRI to better assess those injuries, as well as ignoring his complaints of pain, all

of which led the otherwise preventable or curable injuries to worsen into a permanent and painful condition. *Id.* at 12. Plaintiff raises an identical claim against Tremel and against previously unmentioned defendant, nurse Jane Doe #1. *Id.*

The deliberate indifference claim may proceed against Van Verkinter and Tremel. While simply failing to order an MRI as Plaintiff desired is not deliberate indifference, the allegations that they ignored or downplayed his injuries and pain suffice at the screening stage. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *Gamble*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."). However, there are no factual allegations whatsoever about the Doe nurse beyond the bare statement of the claim against her, and so there is no basis on which to conclude that she was deliberately indifferent to Plaintiff's medical needs or that she had sufficient personal involvement in the relevant events to be liable. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). She must, therefore, be dismissed from the case.

### 3.4 Conclusion

For the reasons stated above, Plaintiff will be permitted to proceed on the following claims: (1) use of excessive force, in violation of the Eighth Amendment, against Defendant Franke; (2) First Amendment retaliation against Defendant Campbell; and (3) deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, against Defendants Tremel and Van Verkinter. 28 U.S.C. § 1915A(b).

### 4. MOTION FOR APPOINTMENT OF COUNSEL

The Court closes by addressing Plaintiff's pending request for appointment of counsel. (Docket #8). As a civil litigant, Plaintiff has no

automatic right to court-appointed counsel. *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). However, under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." The court should seek counsel to represent the plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). The Seventh Circuit has emphasized that "[t]he question is not whether a lawyer would present the case more effectively than the pro se plaintiff; 'if that were the test, district judges would be required to request counsel for every indigent litigant.'" *Pruitt*, 503 F.3d at 655 (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006)) (internal quotation omitted). Instead, "[t]he question is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Id.*

Plaintiff's request must be denied because he has not presented evidence showing that he cannot litigate this matter competently on his own. First, Plaintiff's suggestion that he should be appointed counsel simply because he has no legal training and limited access to the law library, (Docket #8 at 1), runs directly afoul of the admonition in *Pruitt* that a better chance of success is no reason to appoint counsel. As a litigant in this Court, Plaintiff is under an obligation to familiarize himself with the relevant legal standards and rules. Faced with a dearth of competent counsel willing to take on prisoner litigation, the Court cannot appoint counsel without some good reason that the prisoner is actually incapable of prosecuting his own

case. Ignorance of the law is not a qualifying reason. Indeed, despite his claimed lack of capacity, Plaintiff's submissions thus far show that he can cogently present his factual and legal allegations.

Second, contrary to Plaintiff's belief, the mere fact of his incarceration has never been a reason militating in favor of appointing counsel. *Id.* Third, the Court finds unavailing Plaintiff's cursory claim that the case is too complex for him to litigate. *Id.* The case involves straightforward facts, and even the medical issues involved are not beyond the grasp of a layperson. *See Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014). Finally, the Court is not convinced that the long-distant prospect of trial and cross-examination of witnesses, (Docket #8 at 1), warrants the appointment of counsel at this very early stage in the case. Thus, the Court will deny the motion at this time.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Sgt. Francois, Capt. Schultz, Catherine Francois, and R.N. Jane Doe #1 be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that all claims against the remaining Defendants in their official capacities be and the same are hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this order will be electronically sent to the Wisconsin Department of Justice for service on the remaining Defendants;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Defendants shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this order;

**IT IS FURTHER ORDERED** that Plaintiff's motion for the appointment of counsel (Docket #8) be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where the inmate is confined; and

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if Plaintiff is no longer

incarcerated at any of these institutions, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 5th day of September, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge