# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHAWN RILEY, <br><br> Plaintiff, <br><br> v. <br><br> JARED FRANKE, <br><br> Defendant. | Case No. 17-CV-891-JPS <br><br> **ORDER** |

Plaintiff, who is incarcerated at the Wisconsin Secure Program Facility, filed a complaint alleging that his civil rights were violated during and after an alleged assault by correctional officer Jared Franke ("Franke"). (Docket #58 at 1). The Court recently granted summary judgment to all defendants save Franke himself. *See id.* at 21. Plaintiff's claim of excessive force under the Eighth Amendment against Franke will be tried to a jury on October 22, 2018. (Docket #59). Presently before the Court is Plaintiff's fourth motion requesting the appointment of counsel. (Docket #61). For the reasons stated below, the motion will be denied.

1. **BACKGROUND**

As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." The court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013)

(quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to the Court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of the plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When the Court recruits a lawyer to represent a *pro se* party, the lawyer takes the case *pro bono*. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case *pro bono* has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L. R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice here. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-fund.

The District is eternally grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Though the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful Section 1983 cases, but they will otherwise go unpaid. The

small pool of attorneys available to this District for *pro bono* appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent *pro se* plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the *pro se* appellant); *McCaa*, 893 F.3d at 1029 (same).

Against the thin ranks of ready and willing counsel rises the overwhelming tide of *pro se* prisoner litigation in this District.[1] In 2010, approximately 300 civil actions were filed by prisoner litigants. More than half sought habeas corpus relief, while the remainder were Section 1983 actions alleging violations of constitutional rights. Since then, the number of habeas corpus cases has remained largely steady at around 130 per year, while the volume of Section 1983 lawsuits has skyrocketed. About 300 Section 1983 actions were filed in 2014, and another 300 in 2015—each equal to the entirety of the District's civil prisoner filings from just four years earlier. In 2016, Section 1983 actions numbered 385, and in 2017 it ballooned to 498. This year, the District is on track to again receive around 500 Section 1983 complaints filed by *pro se* prisoners. All told, well over a third of the

---

[1] Although non-prisoner *pro se* litigants may also be considered for the appointment of counsel under Section 1915, the Court does not address that set of *pro se* litigants here for a few reasons. First, the volume of non-prisoner *pro se* litigation is miniscule compared to that brought by prisoners. Second, prisoners are much more likely to request the appointment of counsel. Paradoxically, prisoners are usually far better equipped to litigate than non-prisoners, as prisoners have access to electronic filing, institution law libraries, and fellow prisoners who offer services as "jailhouse lawyers." Yet, learning a little of the legal system means that prisoners know they can request the appointment of *pro bono* counsel, which they do with regularity. Indeed, Plaintiff has sought the appointment of counsel three times already.

District's new case filings are submitted by unrepresented inmates. On its best day, this District has the resources to realistically consider appointment of counsel in only a tiny fraction of these cases.

Moreover, hard data supports the conclusion that these prisoner suits are frequently without merit. Since 1988, prisoners have generally lost about 85% of the cases they bring. Margo Schlanger, *Trends in Prisoner Litigation, as the PLRA Enters Adulthood*, 5 U.C. Irvine L. Rev. 153, 164 (2015). Only around 5% of prisoner suits settle, and from 2002–2012, under 2% made it to trial. *Id.* It is unsurprising, then, that local attorneys are unwilling to take on prisoner litigation.

Finally, it must be remembered that when the Court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress' instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are the Court's ever-more-limited time and resources.

2. **ANALYSIS**

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be appointed to represent Plaintiff for the trial in this case. First, the Court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district judges either overlook

arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09–cv–90–bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009). Here, Plaintiff has submitted letters from many attorneys, all of whom have refused to take his case. This is sufficient.

Plaintiff's request falters on the second *Pruitt* step: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each *pro se* litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While courts need not address every concern raised in a motion for appointment of counsel, they must address "those that bear directly" on the individual's litigation capacity. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must also incorporate the reality that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of Section 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit has noted that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. The court deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening of cases under 28 U.S.C. § 1915A.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345,

2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. The Court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if the Court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. *Walker*, 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. The Court would have no way to assess whether the inmate is sandbagging.

Finally, the Court of Appeals indicates that claims are particularly complex when they touch on the defendant's state of mind, such as with claims of deliberate indifference to prison conditions or medical needs. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most claims brought by prisoners. Indeed, it is often the defining characteristic that sets Section 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of serious medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in

original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most *pro se* litigants to prove, then counsel will likely need to be appointed in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in *pro se* prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence or argument showing that he cannot litigate or try this matter competently on his own.[2] First, Plaintiff asserts that he should be appointed counsel because he has no legal training and limited access to the law library. Plaintiff's lack of legal training, while unfortunate, brings him in line with practically every other prisoner litigating in this Court. Nor is Plaintiff's limited access to the law library a matter this Court should remedy with the provision of counsel, for many non-incarcerated persons suffer from similar difficulties and yet are expected to pay for their own lawyers if they want help with research or preparation of court filings.

---

[2]Plaintiff makes no arguments in favor of the appointment of counsel in his motion. (Docket #61 at 1). He simply gestures back at all of his prior submissions and requests reconsideration of the earlier denials. *Id.* The Court's prior evaluation of Plaintiff's arguments remains valid, but in the interest of completeness the Court will take a fresh look at those arguments in view of the present posture of the case and Plaintiff's submissions to date.

Plaintiff's point seems to be that a lawyer would do a better job than he, but the Seventh Circuit has rejected this sort of reasoning. *Pruitt*, 503 F.3d at 655.

Indeed, it is worth pointing out that unlike a non-prisoner *pro se* litigant, who is generally a member of society with common demands upon his time like work and family obligations, prisoners like Plaintiff have more than sufficient discretionary time to attend to their litigation tasks and develop their case. Perhaps prison conditions are not ideal for that work, but the time they have available to do the work should ease some of the burden associated with those conditions.

Moreover, as a litigant in this Court, Plaintiff is under an obligation to familiarize himself with the relevant legal standards and procedural rules. The Court assisted Plaintiff in this regard, as it does with all prisoner litigants, by providing copies of the most pertinent federal and local procedural rules along with its trial scheduling order. Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel.

Despite his claimed lack of ability, Plaintiff's submissions thus far show that he can cogently present his version of the facts and his legal arguments. Notably, his claims against the now-dismissed defendants failed not because Plaintiff's submissions were infirm, but because the claims were wholly meritless or had not been properly exhausted. *See* (Docket #14); (Docket #58). Plaintiff's lack of legal training and access to the law library have not yet had a meaningful effect on his presentation.

Second, it is noteworthy that Plaintiff has submitted no evidence that he suffers from cognitive, behavioral, or other limitations affecting his ability to present his arguments in a cogent fashion. *See Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014); *Walker*, 2018 WL 3967298, at *5 (noting that courts should consider "any available evidence" of the prisoner's literacy, communication skills, education level, litigation experience, intellectual capacity, or psychological history). His filings to date suggest that he has no such limitation. Plaintiff counters that those filings have been prepared with the help of another inmate, though he does not explain the extent of his helper's involvement. Courts must consider whether prisoners have received aid in crafting their submissions, *McCaa*, 893 F.3d at 1033, but absent evidence showing that he could not litigate on his own, the Court will not conclude that Plaintiff is incapable without help. In other words, Plaintiff cannot conceal or downplay his own litigation capabilities in order to secure the appointment of counsel, nor will the Court assume, without evidence, that Plaintiff's solo presentation will be less articulate than the record reflects thus far. *See Walker*, 2018 WL 3967298, at *6.

Third, Plaintiff suggests that the fact of his incarceration militates in favor of appointing counsel. Were this true, it would be hard to deny any prisoner litigant a lawyer. More to the point, Plaintiff has not argued, much less shown, that his incarceration has limited his ability to gather evidence and compose pleadings. Although incarcerated, Plaintiff is able to send and receive correspondence, make copies, write motions and briefs, and perform legal research. What more he needs to be able to do, he does not say. *McCaa*, 893 F.3d at 1032–33 (faulting district court for failing to address

plaintiff's specific arguments about his inability to gather and present evidence).

Fourth, the Court finds unavailing Plaintiff's cursory claim that the case is too complex for him to try. As it stands, the only claim that will be tried is the straightforward excessive-force claim against Franke. Presenting this claim will not involve expert testimony or medical evidence. Further, while the claim centers on Franke's state of mind, the Court does not find that this will make the trial complex. *James*, 889 F.3d at 327–28.

In all likelihood, trial will simply be Plaintiff telling his version of the story, Franke telling his, and the jury deciding who is telling the truth. *See Walker*, 2018 WL 3967298, at *5 (finding that medical claims are not *per se* complex and that the prisoner's medical claims were simpler than most, as they focused on which party—the prisoner or the guard—was to be believed). Despite the need to prepare for presenting evidence and engaging in cross-examination, many prisoner litigants in this branch of the Court have ably tried excessive-force claims in the past. Plaintiff and his case do not appear to be meaningfully different. Thus, while the case is approaching its most advanced phase, this fact does not demand the appointment of counsel. *Id.* at 327; *see also Walker*, 2018 WL 3967298, at *6 (finding abuse of discretion in denying counsel to prisoner who could not ably litigate without jailhouse lawyer, who had been transferred, and faced a jury trial by videoconference).

3. **CONCLUSION**

None of the relevant considerations concerning Plaintiff's claims, his abilities, or his circumstances, whether considered separately or as a whole,

convince the Court that counsel should be appointed to represent him at this time. Thus, the Court will deny Plaintiff's motion for appointment of counsel.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for appointment of counsel (Docket #61) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 13th day of September, 2018.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge